**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

|  |  |
|---|---|
| MARY PATRUSTIE and MELISSA CHERRY, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>      vs.<br><br>BON SECOURS MERCY HEALTH,<br><br>            Defendant. | Case No.  1:26-cv-00201 |

## CLASS ACTION COMPLAINT

Plaintiffs Mary Patrustie and Melissa Cherry ("Plaintiffs"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Bon Secours Mercy Health ("BSMH" or "Defendant"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. It is both unfair and unlawful for entities like BSMH to impose punitive health insurance surcharges on employees and their spouses who use tobacco products.

2. This lawsuit challenges Defendant's practice of charging a "tobacco surcharge" that unjustly forces certain employees and their spouses to pay higher premiums for their health insurance provided by Defendant. Such surcharges violate the Employee Retirement Income Security Act ("ERISA") and its anti-discrimination provisions by unfairly targeting employees based on their health status, such as tobacco use.

3. Tobacco surcharges have become more prevalent in recent years, but to be lawful,

1

they must adhere to specific rules set forth by ERISA and related regulations. These rules mandate that employers cannot charge extra fees based on tobacco use unless those fees are part of a compliant wellness program that offers a reasonable alternative standard to all participants. While ERISA allows for wellness programs that incentivize healthy behavior, these programs must meet strict criteria.

4. First, wellness programs must genuinely promote health, not merely serve as a revenue generator. Second, the program must provide a "reasonable alternative standard" to individuals for whom it is difficult to meet the initial health or other insurance requirements, such as quitting tobacco use. This reasonable alternative could include participation in a smoking cessation program, through which participants can avoid the tobacco surcharge for the entire plan year. Most importantly, employers must clearly communicate the availability of this alternative standard in all relevant plan materials.

5. However, the Bon Secours Mercy Health Welfare Benefits Plan (the "BSMH Plan" or "Plan") does not provide the required reasonable alternative standard, and even if it did, Defendant has failed to adequately notify employees about the availability of such an alternative that would enable employees to avoid the surcharge for the entire year in all its plan communications. Consequently, Defendant's tobacco surcharge violates ERISA's anti-discrimination provisions by imposing additional costs on employees who use tobacco products without meeting the legal requirements for a bona fide wellness program.

6. Plaintiffs were employees of BSMH for multiple years and were required to pay the tobacco surcharge to maintain health insurance coverage under the Plan since at least 2020. The surcharge has imposed an additional financial burden on them and other similarly situated employees as a result of BSMH's failure to comply with the legal requirements for wellness programs under ERISA.

2

7. Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover the unlawfully charged tobacco surcharges and to obtain plan-wide equitable relief to prevent BSMH from continuing to collect these improper fees in violation of ERISA.

8. Under 29 U.S.C. § 1109 and 1132(a)(2), BSMH, as a fiduciary of the Plan, has a legal obligation to act in the best interests of its participants, prudently, and to comply with federal law. Plaintiff also seeks appropriate equitable relief under 29 U.S.C. § 1132(a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

9. Plaintiff Mary Patrustie is, and at all time mentioned herein was, an individual citizen of the State of Ohio. Ms. Patrustie was an employee of BSMH from September 2017 through August 2021 working at three different BSMH hospitals in the Cincinnati-area.

10. Plaintiff Patrustie was an employee of BSMH who paid the tobacco surcharge in the form of additional premiums associated with her health insurance policy offered through her employer during the applicable limitations period. She never participated in the tobacco-cessation program because she did not it existed.

11. Plaintiff Patrustie was a participant in the Plan pursuant to 29 U.S.C. § 1102(7) during the Class Period.

12. Plaintiff Melissa Cherry is, and at all times mentioned herein was, an individual citizen of the State of Ohio. Ms. Cherry has been an employee of BSMH from September 1997 through present, working as an RN at a BSMH Hospital in the Toledo-area.

13. Plaintiff Cherry is an employee of BSMH whose husband paid the tobacco surcharge in the form of additional premiums associated with her health insurance policy

offered through her employer during the applicable limitations period. Her husband never participated in the tobacco-cessation program and never knew about it.

14.     Plaintiff Cherry and her spouse were participants in the Plan pursuant to 29 U.S.C. § 1102(7) during the Class Period.

15.     Bon Secours Mercy Health ("BSMH") is a large nonprofit Catholic health system that operates hospitals, outpatient clinics, urgent care centers, primary and specialty physician practices, and senior-care facilities across multiple U.S. states and in Ireland. BSMH had approximately 60,000 employees across the United States and Ireland. Its principal headquarters are located at 1701 Mercy Health Place, Cincinnati, OH 45237.

16.     At all times relevant to this lawsuit, Defendant sponsored, maintained, and managed the Plan. BSMH is the Plan Administrator. Recently filed public documents show the Plan has over 40,000 active participants as of December 31, 2024. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

17.     Both Plaintiffs have Article III standing for their reasonable alternative standard claims because participation in any tobacco cessation program is irrelevant—neither ERISA nor Article III requires a plaintiff, or her spouse, to enroll in an unlawful program to establish standing. Plaintiffs' injury did not arise from their participation (or non-participation) in the alternative under the Tobacco Surcharge Program, but from BSMH's deduction of a tobacco surcharge from each of their paychecks.

18.     Both Plaintiffs also have Article III standing for their failure to notify claims because courts have consistently recognized that disclosure violations tied to actual monetary loss confer standing.  ERISA disclosure violations can support standing when the omission interferes with a participant's ability to understand and exercise plan rights, and standing is denied only

4

where no actual loss was shown. Here, the allegedly deficient notice is directly connected to Plaintiffs' monetary loss. That loss constitutes a concrete injury traceable to BSMH's conduct and redressable by judicial relief.

## JURISDICTION AND VENUE

19. The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

20. This Court has personal jurisdiction over Defendant because it is registered and headquartered in this District, and Plaintiffs' claims and the claims of all others similarly situated arise from the acts and omissions of Defendant with respect to its activities and conduct concerning Plaintiff and the Class in the State of New York.

21. Venue is proper in this District under 28 U.S.C. § 1132(e)(2) because this is the District in which Defendant has its principal place of business and where a substantial portion of the statutory breach took place. Additionally, Defendant conducts business and can be found in this District.

## FACTUAL BACKGROUND

**I.    DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE**

22. To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use.

23. Under this rule, a plan "may not require any individual (as a condition of

5

enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

24.     Defendant's tobacco surcharge violates this provision. Plaintiffs and all others similarly situated were required to pay an additional premium or contribution per year based on a "health status-related factor" — their use of tobacco products. Plaintiffs, and all others similarly situated, were forced to pay the tobacco surcharge to remain insured under the Plan.

25.     Specifically, Defendant imposes an unlawful tobacco surcharge on employees and their beneficiaries (*e.g.*, spouses/domestic partners) who are enrolled in the Plan and have used tobacco products within the last six (6) months.

26.     All U.S. benefits-eligible employees (and their covered spouses/domestic partners, where applicable) who use tobacco pay higher rates under the BSMH Medical Plan.

27.     If BSMH employees use tobacco, they pay an additional $75-$90 per month (or $900-$1080 per year) under the Medical Plan. If the employee's covered spouse/domestic partner also uses tobacco, they will also pay another $75-$90 per month (or $900-$1,080 per year) under the Medical Plan If both the employee and the covered spouse/domestic partner indicate they are tobacco users, the surcharge would be $150-$180 per month (or $1,800-$2,160 per year).

28.     Under the BSMH Medical Plan, "tobacco use" includes cigarettes, smokeless tobacco, electronic cigarettes, water vapor devices "and more."

29.     During annual benefits enrollment, employees and their spouses attest to tobacco-use status.

30.     In Benefits Guide provided to employees during benefit enrollment around October and/or November each year provides the following under "Tobacco Surcharge":

6

> According to the CDC, tobacco use is the single most preventable cause of disease and death. Mercy is committed to promoting good health and managing health care costs for our co-workers and the ministry.
>
> If you and/or your covered adult have used tobacco in the previous six months and enroll in the [Year] medical plan, you may be subject to a tobacco surcharge. The tobacco surcharge is [$75-$90] per pay period for the co-workers and/or [$75-$90] per pay period for the covered adult. If both of you are tobacco users, the surcharge is [$150-$180] per pay period.
>
> **This surcharge is in addition to the medical plan premiums.**
>
> You and/or your covered adult have 90 days from your benefit start date to complete the required course. It is the co-worker's and/or covered adult responsibility to contact Marquee Health by phone at 800-882-2109 to schedule sessions.

31. The Annual Premiums and plan summaries announcement sent yearly by email to employees provides even less information about the Tobacco Surcharge Program at BSMH. For example, "2025 Premiums and plan summaries" document states only:

> **Tobacco-free saves you even more per pay.** Healthy Choices medical premiums are $90 less per pay period than Standard medical premiums for tobacco users. During enrollment, you will attest to tobacco-use status for you and your covered spouse. Tobacco use includes cigarettes, smokeless tobacco, electronic cigarettes, water vapor devices and more.
>
> BSMH offers a reasonable alternative to allow you to pay Healthy Choice premiums. More details on Breathe Easy+, a tobacco cessation program through Be Well, is available on HR ServiceNow.

32. Under this tobacco surcharge program, Plaintiffs paid at least $900 in tobacco surcharges, starting on January 1, 2020, and then, at some point during the Class Period, that amount increased to at least $1,080 in tobacco surcharges per year.

33. During this period, Defendant controlled the tobacco surcharge, including determining which participants were charged and by withholding the tobacco surcharge from a participant's paycheck. Rather than placing these funds in a trust account, Defendant retained the amounts collected as part of its own assets.

7

34.     The Plan offered by Defendant requires individuals to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any tobacco use and fails to meet the safe harbor exception.

## II.     DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS

### A.     Lack of Reasonable Alternative Standard.

35.     Defendant failed to provide a compliant wellness program for tobacco-using participants. As discussed further below, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard. In this case, being tobacco-free.

36.     The standard is intended to ensure that participants have an opportunity to avoid surcharges, such as tobacco-related premiums, by participating in wellness programs like smoking cessation programs. Additionally, employees must receive the *full reward* once they meet the alternative standard. To be clear, there must be a way for participants to avoid the surcharge for the full plan year, including retroactively once they complete the tobacco cessation program.

37.     ERISA offers a limited exception to its general rules by providing safe harbor for certain wellness programs. *See* 29 U.S.C. § 1182(b)(2)(B).

38.     This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in these wellness programs. One way for plans to take advantage of the safe harbor provisions while charging participants additional surcharges is to offer programs designed to increase the well-being of the person such as, for example, smoking cessation program. The regulations covering health-contingent wellness programs require that the wellness programs,

like smoking cessation programs, satisfy certain criteria. *See* 78 FR 33158, 33159.

39.     A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding what "reasonable" health-contingent programs must include.

40.     To qualify under ERISA, there are three basic requirements: First, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods; second, everyone in a similar situation must have a chance to earn the "full reward" — in other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard; third, the program must be disclosed "in *all* plan materials" describing the reward and explaining the availability of a reasonable alternative standard or waiver, and must also provide the ability to request an accommodation to the standard through one's personal physician. 29 C.F.R. § 2590.702(f)(4) (emphasis added).

41.     These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33160 (June 3, 2013) (emphasis added).

42.     Crucially, *every one* of the safe harbor requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

43.     Defendant's tobacco surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard, or that it provide notice of a reasonable and alternative standard. As a result, it cannot meet the elements of this affirmative defense.

44.     While BSMH offers the "Marquee Health" and/or the "Breather Easy+" tobacco cessation programs as part of its wellness initiative during the Class Period, the Plan materials do not sufficiently explain the process by which employees and their spouses/domestic partners can avoid or remove the surcharge retroactively. Specifically, the guide mentions that participants can complete these tobacco surcharge programs but does not indicate in any way that the surcharges will be removed for the entire Plan year once the program has been completed.  At best, it appears that such surcharges will be removed only on a *prospective* basis starting the next Plan year, not for the entire plan year, as required.

45.     This means participants who become tobacco-free part-way through the Plan year or who complete a smoking cessation program can avoid future surcharges starting January of the following year, but are not retroactively reimbursed for any surcharges already paid in that Plan year. This practice violates ERISA's requirements that participants receive the "full reward" after satisfying the alternative standard.

46.     Moreover, tobacco-using employees and their spouses only have "90 days from [their] benefit start date to complete the required course." In other words, participants who completed the tobacco-cessation course by March 31 could apparently receive a refund of the difference between the higher premiums initially paid and the discounted premiums for non-tobacco users.  However, if the participant completed the alternative after March 31, the participant was only eligible to receive prospective removal of the higher health premium and not retroactive reimbursement.

47.     BSMH's Tobacco Surcharge Program does not offer the full reward because it limits the retroactive relief available to some participants. For instance, if a calendar-year wellness-program offers a premium discount and a participant satisfies that alternative on April 1, the plan must still retroactively grant that participant the premium discounts for January,

February, and March. BSMH fails the full-reward requirement by withholding retroactive relief. BSMH's completion requirement within "90 days of the benefit starting date" denied retroactive credits within the same Plan year in violation of ERISA's wellness program safe harbor.

48.     Defendant, during the applicable limitations period, maintained exclusive control over the tobacco surcharge, including determinations as to which participants were and continue to be required to pay the surcharge. Defendant withholds the amount of the surcharge from participants' paychecks and deposits these funds into its own accounts, rather than into a trust account.

49.     By depositing these ill-gotten gains into its own accounts, Defendant has dealt with assets of the Plan for its own interests, in violation of ERISA. Defendant has a fiduciary responsibility to ensure that these funds are used to support coverage for its employees' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendant has increased its own bottom line allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards.

50.     Because the Plan fails to provide a compliant reasonable alternative standard that allows participants to receive the "full reward"— avoiding the surcharge for the entire plan year — Defendant's wellness program fails to provide reasonable alternative standards and fails to comply with the requirement to make available the "full reward" to participants.

51.     In other words, even though Defendant offers a quit-tobacco program, employees who complete it can only avoid the surcharge on a go-forward basis and are not eligible for retroactive reimbursement for surcharges already paid during the plan year. On this basis alone, the Plan violates ERISA's anti-discrimination provisions.

        **B.**      **Lack of Notice of Reasonable Alternative Standard.**

52.     ERISA also requires that employers clearly communicate the availability of

reasonable alternative standards to all employees in all plan materials.

53.     A compliant wellness program must disclose the availability of a "reasonable alternative standard to qualify for the reward" in all plan materials.

54.     These disclosures must also provide "contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated."

55.     However, if the "plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required."

56.     Because BSMH's tobacco surcharge materials discussed specific details regarding the Tobacco Surcharge Program, BSMH triggered the full disclosure requirements to include the physician-notice requirement.

57.     For instance, BSMH distributed plan materials entitled: "2025 Premiums and plan summaries." But that document states only that "BSMH offers a reasonable alternative to allow you to pay Healthy Choice premiums. More details on Breathe Easy+, a tobacco cessation program through Be Well, is available on HR ServiceNow."

58.     Although this document mentions the Breathe Easy+ tobacco cessation program and how to find out more information, it does not provide any information that (1) tobacco surcharge reimbursement will be paid retroactively for all surcharges imposed in the current Plan year when the tobacco cessation program is completed, or (2) that if, due to a medical condition or it is medically inadvisable for an employee to achieve the standards of the tobacco surcharge program, those standards may be avoided by providing a physician recommendation.

59.     The regulations require plans and issuers to "disclose **in all plan materials** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), **including contact information for obtaining a**

12

*reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated*." 29 C.F.R. § 2590.702(f)(3)(v) (emphasis added); see also 42 U.S.C. § 300gg-4(j)(3)(E).

60.     Additionally, to be deemed a lawful wellness program, the regulations provide sample notification language. 29 C.F.R. § 2590.702(f)(6). Paragraph (f)(6) states:

> Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

29 C.F.R. § 2590.702(f)(6).

61.     "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158-01, 33166.

62.     Defendant's Plan documents fail to communicate the physician accommodation option and fail to specify that completing the tobacco surcharge program can help participants avoid the surcharge for the whole Plan year, both in violation of ERISA's notification requirements.

63.     Defendant's failure to adequately disclose this information in all Plan materials deprives employees of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on employees who could otherwise meet the requirements of the alternative standard. Accordingly, the tobacco surcharge wellness program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

64.     Plaintiffs and their spouses did not complete the tobacco cessation program because they were not adequately notified of the program and the benefits that completion of that program entailed.

65.     Plan materials do not inform employees that completing the program will

13

entitle them to the full reward of avoiding the surcharge for the entire year. Instead, employees are led to believe that the surcharge can only be avoided prospectively, if at all, which discourages participation and violates ERISA's requirement that participants be clearly informed of their ability to avoid surcharges through reasonable alternative standards.

66. Much of this language, including the ability to "earn the same reward by different means" and the fact that the BSMH Plan will "work with you . . . [and] with your doctor," is missing from the BSMH Plan's materials distributed to the Plan's participant.

67. None of the Plan documents provided to Plaintiff or the Class in a written form, or digitally on the computer, disclose a means by which a participant could either receive the "full reward" for the tobacco surcharge for the entire Plan year, or a manner to prove a recommendations from an individual's personal physician regarding how their tobacco use may be accommodated.

68. As a result, all of the BSMH's Plan materials, as required by the wellness plan safe-harbor, do not provide the required notice of the scope and nature of the tobacco surcharge program available to BSMH employees.

69. Because BSMH has not complied with the requirement that it provide notice of the availability and scope of the reasonable alternative standard in *all of the Plan's communications* by which a Plan participant could avoid the tobacco surcharge (including through a recommendation by a personal physician) and receive a full reward, BSMH's tobacco surcharge program is unlawful and the surcharge assessed to the Plaintiff and Class must be returned to them for the entire Class Period.

## CLASS ACTION ALLEGATIONS

70. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

71. 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary of the Plan to bring an action for statutory violations of ERISA for "appropriate equitable relief."

14

72.     In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan who were subject to the unlawful BSMH tobacco surcharge. Plaintiff seeks to certify, and to be appointed as representatives of, the following Class:

> All persons in the United States who paid BSMH's tobacco surcharge in connection with the BSMH's Welfare Benefits Plan at any time from six years prior to the filing of the Complaint to the present.

73.     Excluded from the Class are the Court and its officers, employees and relatives; BSMH and its subsidiaries, officers, directors, and the Plans' fiduciaries; and governmental entities.

74.     The Class includes tens of thousands of members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

75.     There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary and other duties to the Plan and its participants and failed to take the actions alleged as to the Plans and as to any individual participant. Common questions of law and fact include but are not limited to the following:

    a.     Whether BSMH's tobacco surcharge discriminates against Plan participants based on a health status-related factor;

    b.     Whether BSMH's tobacco surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

    c.     Whether BSMH can meet every element of its statutory affirmative defense for operating a compliant wellness program;

    d.     Whether all of BSMH Plan materials describing the tobacco surcharge gave notice of a reasonable alternative standard by which a plan participant may receive the full reward; and

    e.     Whether BSMH, in its discretionary fiduciary capacity of managing the BSMH Plan, breached its fiduciary duties with respect to its collection and retention of the tobacco surcharge.

76. Plaintiffs' claims are typical of the claims of the pertinent class pursuant to Federal Rule of Civil Procedure 23(a)(3), because all class claims arise from the same course of conduct by BSMH – its collection of an unlawful tobacco surcharge – and are based on the same legal theories.

77. Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plan during the Class period, have no interest that conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

78. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

79. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

80. Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

81. Plaintiffs' claims arise from fiduciary breaches as to the Plan in its entirety and does not involve mismanagement of individual accounts.

16

82. The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

83. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for statutory violations and breaches of fiduciary duty.

84. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

85. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the BSMH Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit.

86. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

**FIRST CLAIM FOR RELIEF**
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Provide a Reasonable Alternative Standard**

87. Plaintiffs restate the above allegations as if fully set forth herein.

88. To enroll in the BSMH Plan, Plaintiffs, class members, and their spouses/domestic partners were required to pay a tobacco surcharge in the amount of $900-$1,080 per Plan year during the Class Period.

89. BSMH's tobacco surcharge program is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

   a.  The BSMH Plan did not allow participants an alternative means to avoid the tobacco surcharge by enrolling in a compliant smoking cessation program;

17

b. Even a tobacco user who enrolled in the smoking cessation program would still have the surcharge deducted from their pay going forward if they did not complete the program within 90 days of their benefit start date on January 1st;

c. A participant who completed the alternative standard during a given plan year would not be eligible to receive the "full reward" of the tobacco surcharge program, that being a $900-$1080 reduction per year in premium costs to maintain medical coverage; and

d. Because a participant could not receive the "full reward," the plan did not provide for a reasonable alternative standard.

90. BSMH cannot and did not meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

91. BSMH's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

92. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

93. Plaintiffs and class members were required to pay an illegal fee, and BSMH collected that fee from them in violation of the law. Equity requires that those funds be returned.

94. Equity also requires that the BSMH Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**SECOND CLAIM FOR RELIEF**
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Give Required Notice**

95. Plaintiffs restate the above allegations as if fully set forth herein.

96. To enroll in the BSMH Plan, Plaintiffs and Class members were required to pay a tobacco surcharge in the amount of $900-$1,080 per year.

18

97.     BSMH's tobacco surcharge program is not and was not a permissible wellness program, because BSMH did not give the statutorily-required notice on the scope and nature of the reasonable alternative standard, in that none of the plan documents provided to Plaintiff or Class members in a written form, or digitally on the computer, provided a means by which a participant could receive the full retroactive reward for the tobacco surcharge for the plan year or provided a statement that recommendations of an individual's personal physician regarding their tobacco use may be accommodated.

98.     BSMH therefore cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

99.     BSMH's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

100.    29 U.S.C. § 1182(b) is a statutory provision of ERISA that Plaintiff and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

101.    Plaintiff and Class members were required to pay an illegal surcharge, and BSMH collected that fee from them in violation of the law. Equity requires that those funds be returned to Plaintiff and Class members.

102.    Equity also requires that the BSMH Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**THIRD CLAIM FOR RELIEF**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Loyalty**

103.    Plaintiffs restate the above allegations as if fully set forth herein

19

104.    At all times relevant to this lawsuit, BSMH was the administrator of the BSMH Plan within the meaning of 29 U.S.C. § 1002(16), and was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority over plan management and asset disposition by collecting tobacco surcharges and refusing to retroactively reimburse participants who completed the tobacco cessation courses after the March 31st deadline.

105.    BSMH: (i) decided when surcharges applied or were retroactively refunded; (ii) determined who qualified for the reasonable alternative and whether a participant's physician recommendation would be accommodated; (iii) drafted and disseminated descriptions and enrollment communications that purported to describe participants' rights; and (iv) failed to review the terms of the wellness program or the Plan to ensure compliance with ERISA.

106.    BSMH acted as a fiduciary because BSMH was not merely choosing certain terms for its Plan, but also exercising discretionary control throughout the course of the plan year.

107.    Defendant breached its fiduciary duties by: failing to act solely in the interest of participants (and their beneficiaries) in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(A); administering a Plan that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the Plan and related plan materials, including the tobacco surcharge and any associated wellness programs, as well as any notices regarding the availability of reasonable alternative standards (or lack thereof), in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(B). These breaches caused Plaintiff and the Class to incur unlawful and discriminatory surcharges.

108.    As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

20

109.    As a result of these breaches, and pursuant to 29 U.S.C. § 1109, BSMH is liable to make good to the plan all losses to the plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust all profits it acquired through its violations alleged herein and which it made through use of assets of the plan, and for such other equitable or remedial relief as is proper.

110.    Plaintiffs are authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**WHEREFORE**, Plaintiffs request the Court enter judgment, both individually and on behalf of all participants and beneficiaries in the BSMH Plan, and award the following relief:

a.  certifying a class action for Plaintiff's ERISA claims and appointing Walcheske & Luzi, LLC, and Chestnut Cambronne, as Class counsel;

b.  requiring BSMH to reimburse all participants who paid the tobacco surcharges from February 25, 2020, through the present plus interest;

c.  requiring BSMH to revise any tobacco surcharge program it intends to maintain to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

d.  enjoining BSMH from collecting tobacco surcharges until BSMH revises its tobacco surcharge program to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

e.  imposing a constructive trust on profits received by BSMH as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiff and members of the Class can make claims for benefits;

f.  requiring BSMH to disgorge all unjust enrichment or profits received as a result of fiduciary breaches committed by it with regard to the tobacco surcharge program for which it is liable;

g.  ordering BSMH to provide all accountings necessary to determine the amounts BSMH must make good to the BSMH Plan and to plan participants and beneficiaries;

h.  imposing the equitable remedy of surcharge and requiring BSMH to return all funds it derived from the illegal tobacco surcharge program;

i.  awarding Plaintiffs' counsel attorneys' fees and costs consistent with ERISA's fee

and cost shifting provisions for the costs of prosecuting this action; and

j.   any further relief that the Court may deem just and equitable.


Date: February 25, 2026                                Respectfully submitted,


                                                       */s/ Philip Krzeski*
                                                       Philip Krzeski (0095713)
                                                       **CHESTNUT CAMBRONNE**
                                                       100 Washington Ave South, Suite 1700
                                                       Minneapolis, MN 55401-2138
                                                       Telephone: 612-767-3613
                                                       Email: pkrzeski@chestnutcambronne.com

                                                       Paul M. Secunda (*pro hac vice* motion forthcoming)
                                                       **WALCHESKE & LUZI, LLC**
                                                       235 N. Executive Dr., Suite 240
                                                       Brookfield, Wisconsin 53005
                                                       Telephone: (414) 828-2372
                                                       Email: psecunda@walcheskeluzi.com

                                                       *Attorneys for Plaintiffs and Proposed Class*